**E-Filed 6/11/2009**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| INTEL CORPORATION, a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, a New York Corporation,<br><br>Defendant. | Case Number C 09-299 JF (PVT)<br><br>ORDER[1] (1) DENYING MOTION TO DISMISS OR STAY AND (2) GRANTING MOTION TO INTERVENE<br><br>[re: doc. nos. 22 & 28] |

Plaintiff Intel Corporation ("Intel") seeks declaratory relief as to the duty of Defendant American Guarantee and Liability Insurance Company ("AGLI") to defend and indemnify Intel in connection with certain underlying litigation matters (the "AMD Actions").[2] In its First Amended Complaint ("FAC"), Intel also alleges that AGLI breached a confidential settlement

---

[1] This disposition is not designated for publication in the official reports.

[2] The underlying matters are *Advanced Micro Devices, et al. v. Intel Corp., et al.*, No. 05-441 (D. Del.); *Paul v. Intel Corp.*, No. 05-485 (D. Del.), consolidated as *In re Intel Corp. Microprocessor Antitrust Litigation*, MDL No. 1717 (D. Del.); and the *Intel X86 Microprocessor Cases*, JCCP 4443 (Santa Clara Sup. Ct.). FAC ¶ 4.

agreement, and that AGLI's actions constituted a tortious breach of the implied covenant of good faith and fair dealing.

AGLI moves to dismiss or stay the instant action pursuant to Fed. R. of Civ. P. 12(b)(3) and 12(b)(7), or in the alternative pursuant to the jurisdictional principles enumerated by the Supreme Court in *Brillhart v. Excess Insurance Company of America*, 316 U.S. 491 (1942). In, addition, a second insurer of Intel, Markel American Insurance Company ("Markel"), seeks to intervene in the instant action. Intel does not oppose the intervention. For the reasons set forth below, the motion to dismiss or stay will be denied, and the motion to intervene will be granted.[3]

## I. BACKGROUND

The plaintiffs in the AMD Actions allege an intentional and unlawful scheme by Intel to monopolize the market for microprocessors by coercing customers to refrain from dealing with its competitor Advanced Micro Devices, Inc. ("AMD"). *See* FAC ¶ 18-22. Intel, through a California-based insurance broker, Marsh, purchased several layers of comprehensive liability insurance from at least several insurance companies for the April 1, 2001 through April 1, 2002 time period, including a coverage policy issued by AGLI (the "AGLI Policy"). *Id.* ¶¶ 10-11. These occurrence-based comprehensive liability policies provided layers of coverage above an $11 million retention and a $5 million fronting policy issued by Old Republic Insurance Company ("ORIC"). *Id*. Intel alleges that as a result of the AMD Actions it has exhausted the ORIC retention fronting policy as well as the second layer policy which sits directly below the AGLI Policy. *Id.* ¶¶ 15-16.

The second layer policy was provided by XL Insurance America, Inc. ("XL"), and was issued as Commercial Umbrella Policy No. HFL 004-27-84-01 (the "XL 01-02 Policy"). FAC ¶ 11. The XL 01-02 Policy provided $50 million in coverage for defense and/or indemnity in excess of the retention and fronting policy for each occurrence resulting in Ultimate Net Loss to

---

[3] Markel seeks to intervene pursuant to Fed. R. Civ. P. 24(a) or in the alternative pursuant to Fed. R. Civ. P. 24(b). Because Intel does not oppose the motion, the request will be granted pursuant to Rule 24(a). In addition, the parties' respective requests for judicial notice of certain documents will be granted in full.

Intel, as that term was defined in the XL 01-02 Policy, during the policy period of April 1, 2001 to April 1, 2002. *Id*. The XL 01-02 Policy required XL to "defend any suit against the Insured alleging such injury or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent, and to pay all allocated claims expenses…" XL 01-02 Policy at II. Coverage included liabilities for claims related to "Advertising Liability." FAC ¶ 13. The applicable provision defined Advertising Liability as including:

> Injury arising out of offenses such as, but not limited to, libel, slander, defamation, infringement of copyright, title (including trademark) or slogan, piracy, unfair competition, idea misappropriation, (including trade secrets), breach of confidential information, electronic mail intercepts, misappropriation of the style of doing business (including website/homepage design), or invasion of rights of privacy committed, or alleged to have been committed, in any software, advertisement, promotion, publicity article, broadcast, or telecast.

*Id*. The policy also defined an "occurrence" as follows:

> [A]n offense, which results in advertising liability arising out of the Named Insured's advertising activities. All damages involving the same injurious material or act, regardless of the frequency or repetition therefore, the number or kind of media used, and the number of claimants, and all such damages shall be considered as arising out of one occurrence.

*Id*. ¶ 14.

In 2006, Intel sued XL for coverage and breach of the duty to defend under a 2000-2001 policy (the "XL 00-01 Policy") in the Santa Clara Superior Court, alleging that XL breached its duty to defend Intel in two underlying state court class actions, in which the class plaintiffs alleged that Intel engaged in false and misleading advertising with respect to the performance of its Pentium 4 processors. The first action, entitled *Barbara's Sales, Inc., et al. v. Intel Corp., et al.*, No. 02-L-788 (the "*Barbara's Sales* Action") was filed in Madison County, Illinois in June 2002. The second action, entitled *Janet Skold, et al. v. Intel Corp.*, No. RG 04145635 (the "*Skold* Action"), was filed in the Alameda Superior Court in March 2004.[4] The crux of the

---

[4] The third amended complaint in the *Barbara's Sales* Action alleged various claims for relief, including unfair competition, and *inter alia* sought recovery under the California Consumers Legal Remedies Act, Cal. Civil Code § 1750 *et seq*.; the California Unfair Business Practices Act, Cal Bus. & Prof. Code § 17200 *et seq*.; and the Illinois Consumer Fraud and

3

dispute between Intel and XL was the applicability of the same Advertising Liability provision discussed previously. After Intel and XL filed cross-motions for summary judgment, the Santa Clara Superior Court held that XL had failed to establish that Intel had no potentially covered liability under the XL 00-01 Policy. Subsequently, the parties settled, and as part of the settlement XL was released from all future claims for coverage on the *Barbara's Sales* and *Skold* litigations. Labrador Decl. Ex. E at 2, 4. The settlement also released XL from claims for coverage with respect to the AMD Actions, and covered policy years besides 2000-2001, including the effective dates of the XL 01-02 Policy. *See id.* at 2, 4-5. Intel alleges that the sum of the settlement proceeds paid by XL and the expenditures paid by Intel itself have exhausted the coverage limits of the XL 01-02 Policy. FAC ¶ 15 (the XL 01-02 Policy has been exhausted "through payments for defense by XL to Intel in California and Intel's own expenditures for the defense of the AMD Litigation.").

The AGLI Policy provided an additional $50 million in defense and/or indemnity coverage in the event that defense costs associated with covered liabilities exceeded the lower-level ORIC and XL policies. *See* FAC ¶ 17. Because it is a "follow form" policy, the AGLI Policy contained the same terms and conditions as the XL 01-02 Policy. *Id*. The AGLI Policy also required that the limits of the XL 01-02 Policy be exhausted "by payment of judgments or settlements" in order to trigger any potential duty to defend on the part of AGLI. AGLI Policy, Endorsement 1.

Intel tendered the AMD Actions to AGLI for coverage, and in June 2008 the parties entered into a Standstill and Confidentiality Agreement (the "Confidentiality Agreement"). Pursuant to the Confidentiality Agreement, Intel's claim for coverage against AGLI would be tolled and Intel would share confidential information with AGLI for purposes of evaluating Intel's claim. FAC ¶ 23 and Ex. G. The Confidentiality Agreement also provided that "[a]ny disputes with regard to this Standstill and Confidentiality Agreement shall be decided in a

---

Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*. The allegations in the *Skold* Action were similar to those in the *Barbara's Sales* Action.

4

California court under California law." FAC Ex. G ¶ 17.

The parties could not resolve their differences, and shortly after midnight on January 23, 2009, AGLI filed a declaratory judgment action in Delaware state court against Intel and fifteen other insurance companies as to the respective rights and obligations of the various insurers with respect to coverage for the AMD Actions. FAC ¶ 29. Intel alleges that the complaint filed in Delaware contains confidential information, in violation of the Confidentiality Agreement. That same day, Intel filed the instant action in this Court. The operative FAC asserts five claims for relief: (1) a judicial declaration that AGLI has a duty to defend Intel; (2) breach of contract based upon AGLI's alleged failure to honor its obligation to defend Intel in the ongoing AMD Actions; (3) a judicial declaration that AGLI has a duty to indemnify the defense costs incurred by Intel in connection with the AMD Actions; (4) breach of contract based upon AGLI's alleged failure to adhere to the terms of the Confidentiality Agreement; and (5) tortious breach of the implied covenant of good faith and fair dealing for AGLI's alleged disregard of the terms of both the AGLI Policy and the Confidentiality Agreement.

## II.  LEGAL STANDARD

When considering a motion to dismiss, the plaintiff's allegations are taken as true and the complaint must be construed in the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969 ). "In a case of actual controversy within its jurisdiction…any court of the United States…may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). Before exercising jurisdiction, a district court must first determine if there is an actual case or controversy. *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005). If an actual case or controversy exists, then the court shall use its discretionary power to determine whether the exercise of jurisdiction is proper. "Prudential guidance for retention of the district court's authority is found in *Brillhart*…and its progeny." *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998). The "primary" *Brillhart* factors have been articulated as follows: "A district court should avoid needless determination of state law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation." *Huth v. Hartford Ins. Co. of the Midwest*,

5

1  298 F.3d 800, 803 (9th Cir. 2002) (citing *Dizol*, 133 F.3d at 1225). "Secondary" considerations
2  may include "whether the declaratory action will settle all aspects of the controversy; whether the
3  declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the
4  declaratory action is being sought merely for the purposes of procedural fencing or to obtain a
5  'res judicata' advantage; or whether the use of a declaratory action will result in entanglement
6  between the federal and state court systems." *Dizol*, 133 F.3d at 1225 n.5 (citation omitted).

7        In a motion to dismiss for improper venue, the allegations in the complaint need not be
8  accepted as true and the Court may consider evidence outside the pleadings. *Murphy v.*
9  *Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004). "A party moving to dismiss based on
10 *forum non conveniens* bears the burden of showing (1) that there is an adequate alternative
11 forum, and (2) that the balance of private and public interest factors favors dismissal." *Dole*
12 *Food Co., Inc. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002).

13       A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(7) may be granted where a plaintiff
14 fails to join a non-diverse and indispensable party as that term is defined in Fed. R. Civ. P. 19.
15 *See U.S. v. Bowen*, 172 F.3d 682, 688 (9th Cir. 1999). "In determining whether a party is
16 'necessary' under Rule 19(a), a court must consider whether 'complete relief' can be accorded
17 among the existing parties, and whether the absent party has a 'legally protected interest' in the
18 subject of the suit." *Shermoen v. U.S.*, 982 F.2d 1312, 1317 (9th Cir. 1992) (citation omitted).
19 The Rule 19 inquiry is "fact specific," and the party seeking dismissal has the burden of
20 persuasion. *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990).

### III.  DISCUSSION

22       AGLI's motion to dismiss is premised on its assertion that the instant action is
23 representative a strategy on the part of Intel to litigate multiple coverage lawsuits against its
24 insurers in a "piecemeal" fashion. AGLI takes issue with the limited scope of the instant action
25 in light of the number of years potentially at issue in the AMD Actions and the fact that AGLI
26 and other insurers have provided policies to Intel for other years besides 2001-2002. In support
27 of its contention, AGLI cites Intel's apparent strategy in the litigation against XL in Santa Clara
28 Superior Court and in a subsequent case filed in this Court, *Intel Corporation v. Insurance*

*Company of the State of Pennsylvania*, No. 08-3238 (N.D. Cal.) (the "ICSOP Action"), which recently settled.[5]  The ICSOP Action involved a dispute with an excess carrier (ICSOP) over coverage of costs incurred in connection with the *Barbara's Sales* and *Skold* Actions.  AGLI asserts that the instant action is the latest in step in what has become a predictable pattern of behavior; namely, Intel will sue each carrier individually in order to obtain a favorable judgment or settlement, which then can be used as leverage against other carriers.

AGLI requests that the Court dismiss the instant action pursuant to the doctrine of *forum non conveniens* or stay the case in light of the concurrent litigation in the Delaware state court.  AGLI also argues that despite the fact that Intel and XL have settled, XL nonetheless is an indispensable party to the instant action.  Because XL is incorporated in Delaware and has its principal place of business in New York, AGLI argues that the necessary joinder of XL will destroy diversity.

A.  *Forum Non Conveniens*

"[A] plaintiff's choice of forum should rarely be disturbed." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981).  However, dismissal pursuant to the doctrine of *forum non conveniens* may be appropriate where (1) there is an adequate alternative forum and (2) the balance of private and public interests indicates that trial in the alternate forum would be more convenient for the parties. *Id.* (district court has discretion to dismiss where "an alternative forum has jurisdiction to hear the case, and when trial in the chosen forum would 'establish… oppressiveness and vexation to a defendant…out of all proportion to plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems'").  A motion to dismiss may be granted under *forum non conveniens* where the proposed forum is state court. *Murphy*, 362 F.3d at 1144 n.5.  *See also Klauder & Nunno Enters., Inc. v. Hereford Assocs., Inc.*, 723 F. Supp. 336, 347 n.15 (E.D. Pa.

---

[5] Prior to that settlement, the Court granted a limited right of intervention to Markel, the excess carrier above the ICSOP Policy.  In support of its motion to intervene in the ICSOP Action, Markel alleged that after Intel tendered the *Barbara's Sales* and *Skold* Actions for coverage, Intel had failed to cooperate with Markel's investigation as to whether it has a duty to defend Intel.

7

1989) (because formal transfer of a federal action to state court is available procedurally, "[i]t is axiomatic that dismissal is the only option given a court under *forum non conveniens*").

### 1. Adequate Alternate Forum

An alternate forum is adequate if (1) the defendants are subject to service of process or consent to be sued in that jurisdiction; and (2) the forum permits a satisfactory remedy. *See Piper*, 454 U.S. at 244 n.22. Intel and XL are Delaware corporations and thus subject to service in the proposed forum. In addition, Delaware state court is capable of resolving a dispute regarding insurance coverage. However, the forum selection clause in the Confidentiality Agreement favors adjudication of the California state law claims in this Court.

### 2. Private Interest Factors

The relevant private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for unwilling witnesses; (3) the comparative cost of obtaining willing witnesses; (4) the possibility of a view of any affected premises; (5) the ability to enforce any judgment eventually obtained; (6) and "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).[6]

AGLI contends that the primary source of proof is in Delaware, where a special master appointed by the United States District Court for the District of Delaware is overseeing the extensive discovery associated with the currently pending antitrust litigation. Intel points out, however, that the insurance policies were negotiated at Intel's headquarters in California, and in any event the immediate dispute in this action is whether AGLI has a duty to defend rather than indemnify, a determination of which does not require access to the documents being managed through the special master. In addition, the duty to indemnify often is considered secondary to the duty to defend because the duty to defend is a broader obligation, and the insured may be prejudiced if it is forced to litigate the issue of indemnification concurrently with a defense

---

[6] The parties essentially agree that certain factors (availability of compulsory process, cost of witness attendance, viewing of premises, and enforceability of judgment) are neutral between the two proposed forums and thus there is no need to discuss those factors in any further detail.

against the underlying charges. *See Montrose Chem. Corp. v. Superior Court*, 25 Cal. App. 4th 902, 910 (2004) ("the insurer must not be permitted to join forces with the plaintiffs in the underlying actions as a means to defeat coverage."). Accordingly, the fact that discovery for the AMD Actions is being managed in Delaware is of minimal significance at this stage of the proceedings.

The parties also strongly contest the issue of practicality as it applies to the two actions. AGLI argues that the Delaware action is more comprehensive and will conserve resources by halting Intel's strategy of piecemeal litigation. Intel contends that this Court is the appropriate forum for the instant dispute because the claims for breach of the Confidentiality Agreement are unique to this action and must be heard by a California court. In addition, and counter to AGLI's characterization of Intel's litigation strategy as needlessly piecemeal, Intel argues that it has the right under the "all sums" doctrine of insurance litigation and the language of the AGLI Policy to select a particular insurer and a particular coverage year for coverage of its defense costs.

The "all sums" doctrine allows an insured to sue for a duty to defend under a single policy where the underlying loss spans across several policy periods held by one or more insurers, and the policy in question provides that the insured may recover "all sums" that the insured is obligated to pay for the alleged injury. *See Aerojet-General Corp. v. Transp. Indem. Co.*, 17 Cal. 4th 38, 72-73 (1997) ("If specified harm may possibly have been caused by an included occurrence and may possibly have resulted, at least in part, within the policy period, the duty to defend perdures to all points of time at which some such harm may possibly have resulted thereafter."). Both California and Delaware adhere to this doctrine. *See*, *e.g.*, *State v. Cont'l Ins. Co.*, 88 Cal. Rptr. 3d 288, 301 (Ct. App. 2009) ("in California, when there is a continuous loss spanning multiple policy periods, any insurer that covered any policy period is liable for the entire loss, up to the limits of its policy."); *Hercules, Inc. v. AIU Ins. Co.*, 784 A.2d 481, 489 (Del. 2001) ("pro rata allocation is inconsistent with the "all sums" provisions in the policies."). The targeted insurer then may maintain an action against other insurers for recovery. *See Shade Foods, Inc. v. Innovative Prods. Sales & Mktg., Inc.*, 78 Cal. App. 4th 847, 899 (2000) ("The insurer's independent obligation to indemnify its insured who has primary coverage with other

9

insurers does not require the insurer who pays a settlement to solely bear the burden of the loss. An action for equitable indemnity or contribution then exists against the other insurers.").

In the instant action, the AGLI Policy contains an "all sums" provision. Accordingly, Intel had the right to select a particular insurer and policy period for recovery. *See Cont'l Ins. Co.*, 88 Cal. Rptr. 3d at 301.

### 3. Public Interest Factors

Public interest factors include: (1) local interest of the lawsuit; (2) the court's familiarity with the governing law; (3) the burden on local courts and juries; (4) court congestion; and (5) the costs of resolving a dispute unrelated to a particular forum. *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1147 (9th Cir. 2001).

Intel contends that there is strong local interest in this suit, as Intel is headquartered in California. In addition, it argues that this Court is more familiar with the law governing the Confidentiality Agreement as well as language of the AGLI Policy as a result of the ICSOP Action filed and recently resolved in this Court. AGLI asserts that the public interest will be served best by litigating the entire matter in Delaware, in a single consolidated action.

The Court concludes that the public interest factors essentially are neutral. On the one hand, the Court has not engaged in any substantive analysis of the policy language, because the ICSOP Action settled before summary judgment. In addition, resolution of what potentially may be serial litigation involving the same subject matter ideally would be achieved, if possible, through a single action. It also is undisputed that Intel is a multinational entity that chose to incorporate in Delaware. However, Intel's headquarters are located in California. The FAC contains a claim for relief for an allegedly tortious breach of the implied covenant of good faith and fair dealing, and "California has a strong interest in providing a forum for its residents and citizens who are tortiously injured." *See Dole*, 303 F.3d at 115-16. Considering the allegations of the FAC in the light most favorable to Intel, the Court is hesitant to deny a plaintiff its choice of forum where a tort is alleged.

The essentially neutral balancing of the private and public interest factors is not sufficient to overcome the presumption afforded to Intel's choice of forum. *Dole*, 303 F.3d at 1118

("plaintiff's choice of forum will not be disturbed unless the 'private interest' and 'public interest' factors strongly favor trial in the [proposed forum]."). Accordingly, the motion to dismiss for *forum non conveniens* will be denied.

### B. Dismissal for Failure to Join Indispensable Party

Rule 19 "provides a three-step process for determining whether the court should dismiss an action for failure to join a purportedly indispensable party." *Bowen*, 172 F.3d at 688. First, the Court must determine whether the third party is "necessary." *Id*. A party is necessary and must be joined if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> > (I) as a practical matter impair or impede the person's ability to protect the interest; or
> >
> > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). *See also Bowen*, 172 F.3d at 688. If the third party satisfies the above criteria, the Court must then determine whether joinder is "feasible." Fed. R. Civ. P. 19(b); *Bowen*, 172 F.3d at 688. If joinder is not feasible, the Court "must decide whether the absent party is 'indispensable,' *i.e.*, whether in 'equity and good conscience' the action can continue without the party." *Bowen*, 172 F.3d at 688 (citing Fed. R. Civ. P. 19(b)).

Intel concedes that the settlement proceeds paid by XL did not reach the $50 million coverage limit of the XL 01-02 Policy. Instead, it alleges that the limits for the AGLI Policy have been reached through a combination of settlement proceeds paid by XL and litigation expenditures paid by Intel directly. *See* FAC ¶ 15. In response, AGLI argues that there is a factual issue with respect to whether the XL 01-02 Policy has been truly exhausted, and thus XL is a necessary party to the instant action. AGLI relies upon *Rhone-Poulenc, Inc. v. Int'l Ins. Co.*, 71 F.3d 1299 (7th Cir. 1995), which held that the liability of an excess insurer is "contingent" on the determination of the liability of the underlying insurers. *See id.* at 1301. In that case, the

Case No. C 09-299 JF (PVT)
ORDER DENYING MOTION TO DISMISS OR STAY ETC.
(JFLC1)

Seventh Circuit noted that when the rights of underlying insurers with respect to coverage obligations share certain commonalities with those of the excess insurer, the underlying insurer may be an indispensable party.  *See id.*  ("excess insurer cannot proceed in the absence of the primary insurers until the latter have acknowledged their liability to the insured or have been determined by a court to be liable to him.").

In its settlement with Intel, XL did not admit "liability," but it did agree that the coverage limits of the XL 01-02 Policy had been reached as a result of Intel's litigation expenditures.  Settlement at 5.  In addition, Intel released XL from "all claims" related to the AMD Actions.  *Id.* at 4.  As a result, XL has no real interest in the instant litigation, and Intel reasonably argues that the Court will be able to determine—without prejudice to XL—that the AGLI Policy has been reached based upon the settlement payments and the expenditures paid by Intel in connection with the AMD Actions.

After considering the specific circumstances presented here, *see Makah*, 910 F.2d at 558, the Court concludes that AGLI has not met its burden under Rule 19.  While XL has not acknowledged formal liability or been found in a judicial proceeding to be responsible for Intel's litigation costs, XL will not be prejudiced by any ruling by the Court in the instant action because Intel has released XL from all claims.  Accordingly, the motion to dismiss pursuant to Rule 12(b)(7) will be denied.

    C.  Dismissal or Stay in Light of Concurrent State Court Action

"In the declaratory judgment context, the normal principal that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995).  For the same reasons set forth in its *forum non conveniens* analysis, the Court finds that dismissal pursuant to *Brillhart* or *Wilton* is not warranted.  Intel's California state law claims should be heard in a California court, and severing the action would not result necessarily in a more expedient resolution of the dispute between AGLI and Intel specifically.  Moreover, the two actions were filed only a few hours apart on the same day, and Intel was precluded from filing any earlier on

1  that day because of the three-hour time difference between Delaware and California.
2  Accordingly, the motion to dismiss or stay will be denied.

### IV.  ORDER

Good cause therefor appearing, IT IS HEREBY ORDERED that AGLI's motion to dismiss or stay is DENIED.  Markel's motion to intervene is GRANTED.

DATED:  June 11, 2009

JEREMY FOGEL
United States District Judge

1 | This Order has been served upon the following persons:

2 | Glen Robert Olson     golson@longlevit.com

3 | Lester Owen Brown     brownl@howrey.com, chaneyf@howrey.com, dillardg@howrey.com, hilliardb@howrey.com, kiyotokic@howrey.com, mcmahont@howrey.com

4 | 

5 | Steven Paul Rice     srice@crowell.com, sfortelny@crowell.com

14

Case No. C 09-299 JF (PVT)
ORDER DENYING MOTION TO DISMISS OR STAY ETC.
(JFLC1)