\*\*E-Filed 10/5/10\*\*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| INTEL CORPORATION, A DELAWARE CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, A NEW YORK CORPORATION<br><br>Defendant. | Case No. 09-299-JF (PVT)<br><br>REVISED[1] ORDER[2] GRANTING LEAVE TO FILE MOTION FOR RECONSIDERATION |
| MARKEL AMERICAN INSURANCE COMPANY, a Virginia Corporation,<br><br>Counterclaimant,<br><br>v.<br><br>INTEL CORPORATION, a Delaware Corporation, and AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, a New York Corporation,<br><br>Counterclaim Defendants. | |

---

[1] After receiving comments from the parties with respect to portions of the order that should be redacted from the public docket, the order was revised for stylistic changes to better enable the redactions. No substantive changes have been made.

[2] This disposition is not designated for publication in the official reports.

In an order dated August 3, 2010, the Court granted in part a motion for partial summary judgment brought by Plaintiff Intel Corporation ("Intel"). At the Court's request, Intel, Defendant American Guarantee and Liability Insurance Company ("AGLI"), and Intervenor Markel American Insurance Company ("Markel") have submitted supplemental briefing on (1) the preclusive effect of the decision in *American Guarantee & Liability Insurance Company v. Intel Corporation, et al.*, Civil Action No. 09C-01-170-JOH (Del. Super. Ct. July 29, 2010), and (2) the effect of AGLI's and Markel's failures to argue in this Court that "Condition H" of the AGLI policy controls the triggering of payments for indemnity only rather than defense costs. The Court has considered the parties' submissions, and for the reasons discussed below will request that Intel, AGLI, and Markel submit additional briefing with respect to whether Intel's underlying insurance has been exhausted for relevant purposes.

## I. BACKGROUND

The parties are involved in partially parallel proceedings before this Court and the Delaware Superior Court ("Superior Court"). Previously, Intel purchased general liability insurance policies from AGLI (the "AGLI Policy") and Markel. On January 23, 2009, Intel filed the instant action, seeking *inter alia* a judicial declaration that under the AGLI Policy, AGLI has a duty to defend Intel in unrelated litigation between Intel and Advanced Micro Devices ("AMD"). Markel intervened in the instant case, seeking *inter alia* a judicial declaration that Markel does not have a duty to defend Intel in the AMD litigation. On February 5, 2010, Intel moved in this Court for partial summary judgment with respect to AGLI's duty to defend. Based on the Court's conclusion that Intel's underlying insurance had been exhausted for purposes of the AGLI policy by operation of "Condition H" of the AGLI Policy, the motion was granted in part and denied in part in an order signed on July 26, 2010 and docketed on August 3, 2010.

Also on January 23, 2009, AGLI filed suit against Intel in the Superior Court, *American Guarantee & Liability Insurance Company v. Intel Corporation, et al.*, Civil Action No. 09C-01-170-JOH, seeking a judicial declaration that AGLI does not have a duty to defend Intel against the AMD litigation. The Superior Court action involves multiple AGLI insurance policies, including the AGLI Policy, and several additional insurance carriers. On April 16, 2010, AGLI

1  moved in the Superior Court for partial summary judgment with respect to the single issue of
2  whether Intel's underlying insurance had been exhausted for purposes of the AGLI Policy. In the
3  Superior Court, AGLI relied upon an argument not presented to this Court: that "Condition H"
4  of the AGLI Policy addressed exhaustion with respect to indemnification rather than a duty to
5  defend. ███████████████████████, the Superior Court decided the motion on July 29,
6  2010, ███████████████████████████████████████████████████████████
7  ███████████████████████████████████████████. The same day, the
8  Superior Court circulated an unredacted "final opinion" to Intel and AGLI, requesting that Intel
9  and AGLI indicate by August 10, 2010 the portions of the Superior Court's decision that should
10 be redacted for purposes of publication on Westlaw.
11     On July 29, 2010, AGLI informed this Court of the Superior Court's order, and on
12 August 10, 2010, this Court requested that the parties submit letter briefing to discuss the
13 ramifications of the Superior Court's order. On August 24, 2010, this Court requested that the
14 parties submit briefing with respect to (1) the preclusive effect of the Superior Court's order and
15 (2) the effect of AGLI's and Markel's failure present this Court with the same arguments they
16 presented to the Superior Court.

17                              **II. DISCUSSION**

18 **A.    Preclusive effect of the Superior Court's order**
19     AGLI and Markel contend that pursuant to the doctrine of collateral estoppel, this Court
20 should give preclusive effect to the Superior Court's order with respect to the issue of the
21 exhaustion of Intel's underlying insurance. The parties agree that this Court must "refer to the
22 preclusion law of the State in which judgment was rendered," *Marrese v. Am. Acad. of*
23 *Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985), and that Delaware courts use a four-part test to
24 determine the applicability of collateral estoppel: "(1) [whether] the issue previously decided is
25 identical to the issue at bar; (2) [whether] the prior issue was finally adjudicated on the merits;
26 (3) [whether] the party against whom the doctrine is invoked was a party or in privity with a party
27 to the prior adjudication; and (4) [whether] the party against whom the doctrine is raised had a
28 full and fair opportunity to litigate the issue in the prior action," *City of Newark v.*

1  *Unemployment Ins. Appeal Bd.*, 802 A.2d 318, 324 (Del. Super. Ct. 2002). Delaware courts also
2  will not apply collateral estoppel if "its application would cause an injustice to the precluded
3  party" or if "relitigation of the issue is warranted by differences in the quality or extensiveness of
4  the procedures followed in the two courts." *Id.* (citing *People v. Filitti*, 546 N.E.2d 1142, 1144
5  (Ill. App. Ct. 2d Dist. 1989)). Intel contends that the Superior Court's order is not a prior
6  adjudication, that it is not final for purposes of collateral estoppel, and that it would not be fair to
7  apply the doctrine in this instance.

8        **1.    Whether the Superior Court's order is a prior adjudication**

9        Intel points out that this Court's order was signed on July 26, 2010, three days before the
10  Superior Court decided its order. AGLI and Markel note that this Court's order was not filed
11  until August 3, 2010, and they contend that Federal Rule of Civil Procedure 58(c) provides that a
12  "judgment" is not entered until it has been filed on the civil docket. However, as of August 3,
13  2010, the Superior Court had not filed its own order on the docket in that case, and Delaware
14  Superior Court Rule of Civil Procedure 58(3) provides that "[a] judgment is effectively only
15  when so set forth and when entered" on the judgment docket. Thus, if AGLI and Markel are
16  correct in that an order granting summary judgment is not effective until it has been entered on
17  the docket and that this Court's order was not effective until August 3, 2010, this Court's order
18  still predates the Superior Court's order.

19        **2.    Whether the Superior Court's order is final for purposes of collateral**
20             **estoppel**

21        Both AGLI and Markel rely upon *DeFillipo v. Quarles*, C.A. No. 08C-02-009 JTV, 2010
22  WL 702310, at *3 (Del. Super. Ct. February 26, 2010) (quoting RESTATEMENT (SECOND) OF
23  JUDGMENTS § 13 (1982)), in which a Delaware court concluded that a federal district court's
24  order adjudicating a motion for partial summary judgment was "sufficiently firm to be accorded
25  conclusive effect" for purposes of collateral estoppel. Intel contends that reliance on *DeFillipo*
26  would be inappropriate because it is not a published decision or a decision from the Delaware
27  Supreme Court. However, Delaware Superior Court Rule of Civil Procedure 107(g) permits
28  litigants to rely upon unpublished decisions, and *DeFillipo* addresses directly how a Delaware

4

court would apply collateral estoppel in circumstances similar to those in the instant case.

Intel next contends that the Superior Court's order is not "sufficiently firm" in light of Intel's motion for reconsideration of that order. In addition, Intel points out that it is not clear that Delaware courts consider *all* orders granting partial summary judgment to be "sufficiently firm to be accorded conclusive effect." In *DeFillipo*, the parties dismissed the federal action subsequent to that district court's order. Because the district court did not vacate its prior order, the order was "final" in that it could not be revised at any point in the future. In this instance, the Superior Court's order still could be modified as a result of Intel's motion for reconsideration. Nonetheless, it appears that Delaware courts rely upon the Restatement (Second) of Judgments, *see DeFillipo*, 2010 WL 702310, at *3, which also provides that a "judgment otherwise final for purposes of the law of res judicata is not deprived of such finality by the fact that time still permits commencement of proceedings in the trial court to set aside the judgment . . . ; nor does the fact that a party has made such a motion render the judgment nonfinal." RESTATEMENT (SECOND) OF JUDGMENTS § 13 cmt. f (1982)). The threshold for satisfying the elements of res judicata is higher than that for satisfying the elements of collateral estoppel. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 13 (noting that while res judicata is applicable only when a "final judgment" is rendered, "issue preclusion" applies to "any prior adjudication" that is "sufficiently firm to be accorded conclusive effect)). Thus, if the possibility that a ruling could be set aside does not render the ruling nonfinal for purposes of res judicata, if follows that the possibility that the Superior Court could reconsider its order does not render its order insufficiently firm for purposes of collateral estoppel.

### 3. Whether Intel had a full and fair opportunity to litigate the issue in the prior action

Finally, Intel contends that it would be unfair to apply collateral estoppel in this instance because it did not have a full and fair opportunity to litigate the issue before the Superior Court. Intel asserts, and neither AGLI nor Markel disputes, that AGLI's argument with respect to Condition H ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ was not raised until AGLI's reply brief in support of AGLI's motion for partial summary judgment. "Neither the

Court nor the non moving party should have to wait for the reply brief to understand the alleged bases for dispositive relief." *Lagrone v. AADG, Inc. (In re Asbestos Litig.)*, C.A. No. 04C-10-116-ASB, 2007 WL 2410879, at *4 (Del. Super. Ct. Aug. 27, 2007). On a motion for summary judgment in the Ninth Circuit, the court will not consider new argument or evidence presented in a reply brief unless the non-moving party has had an opportunity to respond. *See Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996). Intel contends that it had the opportunity to respond to AGLI's argument only orally at the hearing on AGLI's motion before the Superior Court. Accordingly, the Court will decline to apply collateral estoppel because relitigation of this issue is warranted by the situation.

**B.    Whether AGLI and Markel have waived the argument**

Both in this Court and in the Delaware Superior Court, Intel relies upon "Condition H" of the AGLI Policy to support its argument that Intel's underlying insurance has been exhausted for purposes of the AGLI Policy. Condition H of the AGLI Policy reads as follows:

> H.  When Damages are Payable
>
> Coverage under this policy will not apply unless and until the insured or the insured's underlying insurance has paid or is obligated to pay the full amount of the Underlying Limits of Insurance stated in Item 6.B. of the Declarations.
>
> When the amount of damages is determined, we will promptly pay on behalf of the insured the amount of damages covered under the terms of this policy.

(Docket No. 123, Labrador Decl. ISO Intel's Mot. for Partial Summary Judgment, Ex. A.) Intel contends that Condition H allows exhaustion of underlying insurance through a combination of payments from Intel and its underlying insurer. In this Court, neither AGLI's nor Markel's papers articulated clearly an alternative interpretation of Condition H. Instead, they directed the Court's attention to a competing clause found in Endorsement #1 of the AGLI Policy, which provides that "[n]othing contained in this Endorsement shall obligate us [AGLI] to provide a duty to defend any claim or suit before the Underlying Insurance Limits shown in Item 6. of the Declarations are exhausted by payment of judgments or settlements." (*Id.*) AGLI and Markel contend that Endorsement #1 does not contemplate exhaustion by payments from Intel itself. This Court concluded that Condition H controlled when Intel's underlying insurance had been

1  exhausted and that Endorsement #1 did not alter the construction of Condition H.

2  █████████████████████████████████████████████████████████████

3  However, in its reply papers before the Superior Court, AGLI did offer an alternative
4  construction of Condition H, arguing that the clause's focus on "damages" and "coverage" under
5  the original terms of the policy indicates that Condition H controls only triggering payments for
6  indemnity rather than triggering payments for defense costs, which instead are controlled
7  exclusively by Endorsement #1. AGLI and Markel contend that this argument actually was
8  presented to this Court in connection with Intel's motion for partial summary judgment. AGLI
9  points to two sentences in its opposition papers, which stated:

> [T]he Following Form Excess Liability Policy language of the AGLI Policy does not include a duty to defend. However, Endorsement 1 changes the policy by providing that the AGLI policy follows the terms and conditions of [Intel's underlying insurance], which includes a duty to defend subject to [certain] limitations . . . . However, this *same* endorsement also *limits* AGLI's potential defense obligation.

13  (Docket 135 at 6:19-28. (emphasis in the original).) AGLI did not expand specifically upon its
14  bare contention that the unamended AGLI Policy did not contemplate a duty to defend, nor did
15  AGLI address specifically Condition H, despite the fact that Intel placed the weight of its
16  argument on that provision. In its opposition papers, Markel did address Condition H, but it did
17  so by citing to precedent concluding that underlying insurance is not exhausted if the underlying
18  insurance did not apply in the first instance. Neither AGLI nor Markel argued specifically that
19  Condition H was inapplicable because it controlled exhaustion with respect to indemnification
20  rather than a duty to defend. Intel contends that reconsideration would be inappropriate because
21  AGLI and Markel could have presented the argument at the time they filed their opposition
22  papers in this court. *See* Civ. L.R. 7-9(b).

23  That said, AGLI did raise the basic argument in its opposition papers, and Federal Rule of
24  Civil Procedure 58(b) provides a court with discretion to revise its interlocutory orders "at any
25  time before the entry of a judgment adjudicating all the claims and all the parties' rights and
26  liabilities." Accordingly, the Court will grant leave for AGLI and Markel to seek reconsideration

27

28

1  of the Court's order of August 3, 2010.[3]  AGLI's and Markel's motions shall be filed on or
2  before October 6, 2010, may not exceed fifteen pages in length, and only may address the
3  exhaustion of Intel's underlying insurance as it relates to Condition H of the AGLI Policy.
4  Intel's opposition papers shall be filed on or before October 13, 2010, and may not exceed fifteen
5  pages in length.  AGLI's and Markel's reply papers shall be filed on or before October 20, 2010,
6  and may not exceed ten pages in length.  It is unnecessary for the papers to discuss in detail the
7  factual and procedural history of the case, unless such history is relevant directly to the
8  arguments made in the papers.

10  IT IS SO ORDERED.

12  DATED: 10/5/2010

    _____
    JEREMY FOGEL
    United States District Judge

---

[3] While Intel previously has provided the Court with its arguments with respect to the error in AGLI's and Markel's contentions and the Superior Court's decision, the Court will not decide the issue without providing AGLI and Markel an opportunity to present the merits of their positions to this Court.

8

Case No. 09-cv-00299-JF (PVT)
REVISED ORDER GRANTING LEAVE TO FILE MOTION FOR RECONSIDERATION
(JFEX1)