\*\*E-Filed 12/7/2010\*\*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| INTEL CORPORATION, A DELAWARE CORPORATION,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, A NEW YORK CORPORATION<br><br>　　　　　Defendant. | Case No. 5:09-cv-00299-JF/PVT<br><br>ORDER[1] (1) GRANTING AGLI AND MARKEL'S MOTION FOR RECONSIDERATION, (2) VACATING ORDER DATED JULY 26, 2010, (3) DENYING INTEL'S MOTION FOR PARTIAL SUMMARY JUDGMENT, AND (4) ENTERING PARTIAL SUMMARY JUDGMENT IN FAVOR OF AGLI AND MARKEL |
| MARKEL AMERICAN INSURANCE COMPANY, a Virginia Corporation,<br><br>　　　　　Counterclaimant,<br><br>　　v.<br><br>INTEL CORPORATION, a Delaware Corporation, and AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, a New York Corporation,<br><br>　　　　　Counterclaim Defendants. | |

---

[1] This disposition is not designated for publication in the official reports.

Case No. 5:09-cv-00299 JF/PVT
ORDER (1) GRANTING AGLI AND MARKEL'S MOTION FOR RECONSIDERATION, ETC.
(JFEX1)

# I. PROCEDURAL BACKGROUND

The instant case arises out of a dispute between Plaintiff Intel Corporation ("Intel") and one of its insurers, Defendant American Guarantee and Liability Insurance Company ("AGLI"). Before this Court, Intel seeks a judicial declaration that AGLI has a duty to defend Intel in underlying litigation and that AGLI's duty arose at the time Intel tendered the underlying complaints to AGLI. In its First Amended Complaint ("FAC"), Intel also alleges that AGLI breached a confidential settlement agreement and the implied covenant of good faith and fair dealing. A second insurer of Intel, Markel American Insurance Company ("Markel"), has intervened and counterclaimed for declaratory relief with respect to its obligations and the allocation of any obligations between itself and AGLI.[2] On February 5, 2010, Intel moved pursuant to Fed. R. Civ. P. 56(a) for partial summary judgment with respect to AGLI's duty to defend. AGLI and Markel opposed the motion. Non-party Liberty Mutual Insurance Company ("Liberty Mutual") filed an *amicus* brief, offering support for the arguments asserted by AGLI and Markel. AGLI moved alternatively for a continuance pursuant to Fed. R. Civ. P. 56(f) to seek additional discovery. The Court heard oral argument on May 7, 2010, and in an order signed on July 26, 2010 and docketed on August 3, 2010, granted Intel's motion for summary judgment in part and denied AGLI's request for a continuance.

In parallel litigation before the Delaware Superior Court, AGLI filed suit against Intel, seeking a judicial declaration that AGLI does not have a duty to defend Intel in the underlying actions. The Delaware Superior Court action involves multiple AGLI insurance policies, including the policy at issue here, and several other insurance carriers. On April 16, 2010, AGLI

---

[2] Though it did not oppose Markel's motion to intervene, Intel argues that Markel did not have standing to oppose the motion for partial summary judgment. Intel points out that it has not tendered its defense to Markel and, while AGLI seeks contribution from Markel in a suit filed in Delaware, AGLI does not seek contribution in the instant action. The Ninth Circuit has "yet to decide whether putative intervenors must satisfy standing independently of the parties to the case." *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009). However, because Intel did not oppose Markel's motion to intervene in the first instance, the Court will continue to allow Markel to participate in this action.

1  moved for partial summary judgment in the Delaware action with respect to the single issue of
2  whether Intel's underlying insurance had been exhausted for purposes of the relevant policy
3  between Intel and AGLI.³ The Delaware Superior Court decided the motion on July 29, 2010.
4        Subsequent to the July 29, 2010 decision of the Delaware Superior Court, AGLI and
5  Markel sought leave in this Court to file a motion for reconsideration.⁴ As discussed in this
6  Court's order granting that request, *Intel Corp. v. Am. Guarantee and Liability Ins. Co.*, No.
7  09-299-JF PVT, 2010 WL 4033387, at *4 (N.D. Cal. Oct. 5, 2010), Intel's motion for partial
8  summary judgment relied heavily upon its construction of "Condition H" of the applicable
9  insurance policy between it and AGLI. AGLI's and Markel's original opposition to that motion
10 relied upon a separate provision of the same policy, but no party attempted to reconcile the two
11 provisions. AGLI and Markel now articulate an argument that could reconcile all of the terms of
12 the insurance policy. For the reasons set forth below, the Court finds that argument persuasive.
13 Accordingly, the motion for reconsideration will be granted, the order dated July 26, 2010 will be
14 vacated, Intel's motion for partial summary judgment will be denied, and partial summary
15 judgment will be entered in favor of AGLI and Markel.

## II. FACTUAL BACKGROUND

17       The following facts are undisputed and are taken from this Court's order of July 26, 2010:
18 **A.    The underlying actions**
19       On June 27, 2005, Advanced Micro Devices ("AMD") filed a complaint in the United
20 States District Court for the District of Delaware, Case No. 05-411 ("the AMD action"). AMD
21 alleged that, "[a]mong other things,

22      •    Intel has forced major customers into exclusive or near-exclusive deals;

---

³ This issue is one of several that also was raised by Intel's motion for partial summary judgment in this Court. As discussed below, AGLI's more focused motion in the Delaware action appears to have allowed AGLI and Markel to develop arguments with respect to the exhaustion issue that were not presented in this Court.

⁴ AGLI and Markel also asserted that the Delaware court's order was entitled to collateral estoppel effect. See *Intel Corp. v. Am. Guarantee and Liability Ins. Co.*, No. 09-299-JF PVT, 2010 WL 4033387 (N.D. Cal. Oct. 5, 2010).

- it has conditioned rebates, allowances and market development funding on customers' agreement to severely limit or forego entirely purchases from AMD;
- it has established a system of discriminatory, retroactive, first-dollar rebates triggered by purchases at such high levels as to have the practical and intended effect of denying customers the freedom to purchase any significant volume of processors from AMD;
- it has threatened retaliation against customers introducing AMD computer platforms, particularly in strategic market segments;
- it has established and enforced quotas among key retailers effectively requiring them to stock overwhelmingly, if not exclusively, Intel-powered computers, thereby artificially limiting consumer choice;
- it has forced PC makers and technology partners to boycott AMD product launches and promotions;
- and it has abused its market power by forcing on the industry technical standards and products which have as their central purpose the handicapping of AMD in the marketplace.

(Intel's Request for Judicial Notice in Support of Mot. for Partial SJ, Ex. A ("AMD complaint") ¶ 2.) Shortly after AMD filed its complaint, several class action complaints were filed in both Delaware and California courts. These complaints contained many allegations similar or identical to the allegations in the AMD complaint. The Delaware actions were consolidated as *In re Intel Corp. Microprocessor Antitrust Litigation*, MDL No. 1717 (D. Del.), and the California actions were consolidated as *Intel X86 Microprocessor Cases*, JCCP 4443 (Santa Clara Sup. Ct.). (FAC ¶ 4.) The three actions will be referred to collectively as "the underlying actions."

Intel and AMD settled the AMD action in November 2009. The class actions in Delaware and California still are pending. Intel alleges that it has expended ▇▇▇▇ in defense costs related to the underlying actions. (DeLeon Decl. in Support of Intel's Mot. for Partial SJ ("DeLeon Decl.") at ¶ 4 (filed under seal).[5])

**B.  Intel's insurance coverage**

Intel purchased several layers of general liability insurance to cover the period from April

---

[5] Markel objects to the DeLeon declaration, arguing that the declaration violates Fed. R. Evid. 1002. The DeLeon declaration purports to summarize 17,000 pages of attorney invoices and payment information. Fed. R. Evid. 1006 permits "[t]he contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court [to] be presented in the form of a chart, summary, or calculation." Intel has produced the source documents to AGLI and Markel. Further, Ms. DeLeon, an employee in the legal finance department of Intel, declares that she has personal knowledge of Intel's defense costs. (DeLeon Decl. ¶ 2.) Accordingly, the DeLeon declaration is admissible.

1, 2001 to April 1, 2002. It purchased a primary general liability insurance policy from Old Republic Insurance Company ("ORIC"), policy number MWZY 55259 (the "ORIC Policy"). The ORIC Policy offers primary coverage up to a $5 million limit with an $11 million self-insured retention.[6] (Labrador Decl. in Support of Intel's Mot. for Partial SJ ("Labrador Decl."), Ex. F.) It purchased a commercial umbrella policy from XL Insurance America, Inc.[7] ("XL"), policy number HFL 004-27-84-01 (the "XL Policy"). (Labrador Decl. Ex. B.) The XL Policy provides $50 million of coverage above the ORIC Policy and the self-insured retention. AGLI issued a "following form excess liability policy," policy number AEC 5228803 00 (the "AGLI Policy"). (Labrador Decl. Ex. A.) The AGLI Policy follows the form of the XL Policy, which is to say that the two policies cover the same events or occurrences. The AGLI Policy provides $50 million of coverage in excess of the $5 million ORIC policy, the $11 million self-insured retention, and the $50 million XL Policy. Thus, the AGLI Policy is not triggered until Intel has incurred at least $66 million in liabilities and has "exhausted" the underlying policies. Intel also has purchased other insurance policies that are situated above the AGLI Policy.

**C.   Intel's prior dispute and settlement with XL**

In addition to the defense of the underlying actions, Intel tendered the defense of two unrelated actions to XL: *Barbara's Sales v. Intel Corporation*, Case No. 02-L-788 (Madison County, Illinois Circuit Court) and *Janet Skold v. Intel Corporation*, Case No. 1-05-cv-039231 (Santa Clara Sup. Ct.). XL declined to defend Intel,[8] and Intel sought a judicial declaration that XL had a duty to defend. In May 2008, Intel and XL entered into a settlement agreement.

[REDACTED]

---

[6] A "self-insured retention" represents an amount that must be paid by the insured before the insurance policy can be triggered.

[7] Previously known as Winterthur International Insurance Company.

[8] XL also issued an second, entirely separate insurance policy covering the same period. (Labrador Dec. Ex. D (filed under seal).) That second policy is not at issue here.

## III. MOTION FOR RECONSIDERATION

Intel relies upon "Condition H" of the AGLI Policy to support its argument that the combination of the ▮▮▮▮ Intel-XL settlement and Intel's own payment of ▮▮▮▮ defense costs has exhausted the $50 million limits of the XL Policy for purposes of the AGLI Policy. Condition H of the AGLI Policy reads as follows:

> H. When Damages are Payable
>
> Coverage under this policy will not apply unless and until the *insured or the insured's underlying insurance* has paid or is obligated to pay the full amount of the Underlying Limits of Insurance stated in Item 6.B. of the Declarations.
>
> When the amount of damages is determined, we will promptly pay on behalf of the insured the amount of damages covered under the terms of this policy.

(Labrador Decl. Ex. A at 17 (emphasis added).) Intel contends that Condition H provides expressly that AGLI's duty to defend can be triggered by the exhaustion of the underlying XL policy through a combination of payments by XL and Intel itself. AGLI and Markel contend that Condition H provides a triggering mechanism only for AGLI's duty to indemnify. They direct the Court's attention to paragraph C of Endorsement #1 to the AGLI Policy ("Paragraph C"), which provides that "[n]othing contained in this Endorsement shall obligate us [AGLI] to provide a duty to defend any claim or suit before the Underlying Insurance Limits shown in Item 6. of the Declarations are exhausted by payment of judgments or settlements." (*Id.* at 4.) They argue that under Endorsement #1, Intel's own payment of its defense costs cannot amount to a "judgment" or "settlement" and therefore that Intel's defense costs can exhaust the XL Policy only if XL itself has paid its full policy limits.

### A. Rules of contract interpretation

"When determining whether a particular [insurance] policy provides a potential for coverage and a duty to defend, [courts] are guided by the principle that interpretation of an insurance policy is a question of law." *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 18 (1995). "The rules governing policy interpretation require [courts] to look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would

ordinarily attach to it." *Id.* "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. [Citation.] If contractual language is clear and explicit, it governs. [Citation.] On the other hand, if the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it. [Citation.]" *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1265 (1992) (internal marks and citations omitted).

California courts have articulated a hierarchy of interpretative methods that apply when a court is faced with an ambiguity:

> When the relevant provisions of an insurance policy are ambiguous, extrinsic evidence may be admitted to determine the proper interpretation. If there is no relevant extrinsic evidence or the extrinsic evidence does not resolve the ambiguity, the court must interpret the ambiguous provisions in the sense the insurer believed the insured understood them at the time of formation. If application of this rule does not eliminate the ambiguity, ambiguous language is construed against the party who caused the uncertainty to exist. This rule, as applied to a promise of coverage in an insurance policy, protects not the subjective beliefs of the insurer but, rather, the objectively reasonable expectations of the insured.

*Qualcomm, Inc. v. Certain Underwriters at Lloyd's, London*, 161 Cal. App. 4th 184, 192 (Cal. App. 4th Dist. 2008) (internal quotation marks and citations omitted).

**B.    Excess insurance**

"Primary coverage is insurance coverage whereby, under the terms of the policy, liability attaches immediately upon the happening of the occurrence that gives rise to liability." *Olympic Ins. Co. v. Employers Surplus Lines Ins. Co.*, 126 Cal. App. 3d 593, 597 (Cal. App. 1st Dist. 1981) (citing *Oil Base, Inc. v. Transport Indem. Co.*, 143 Cal. App. 2d 453, 467 (Cal. App. 2d Dist. 1956)). "'Excess' or secondary coverage is coverage whereby, under the terms of the policy, liability attaches only after a predetermined amount of primary coverage has been exhausted . . . . It is not uncommon to have several layers of secondary insurance . . . . When secondary insurance is written to be excess to identified policies, it is said to be 'specific excess.'" *Id.* at 598.

In the instant case, the AGLI policy is a "specific excess" policy because it provides that "[t]he Limits of Liability of this policy apply in excess of the Limits shown in Item 6. of the Declarations." (Labrador Decl. Ex. A at 4.) "Item 6." of the Declarations lists the XL Policy as

the "Controlling Underlying Policy" and notes that the "Limits Of Insurance" is $50 million. (*Id.* at 2.) Thus, the AGLI Policy attaches once the "predetermined amount" ($50 million) of the "controlling underlying policy" (the XL Policy) has been "exhausted."[9]

If these conditions are not met, AGLI's obligations as an excess carrier have not been triggered. The question of whether the XL Policy has been exhausted thus is a threshold question with respect to whether AGLI owes Intel a duty to defend. While Intel must demonstrate more than the exhaustion of the XL Policy in order to prevail on its motion for partial summary judgment with respect to AGLI's duty to defend, *e.g.*, that the liability claimed in the underlying actions is covered by the AGLI Policy, a failure to establish exhaustion of the XL Policy is fatal to that motion.

///

---

[9] The parties dispute whether the ORIC Policy has been exhausted, but this language provides that the AGLI Policy's coverage is in "specific excess" of the XL Policy and makes no effort to make its coverage contingent upon the ORIC Policy. AGLI cites *Olympic* for the proposition that "[a] secondary policy, by its own terms, does not apply to cover a loss until the underlying primary insurance has been exhausted. This principle holds true even where there is more underlying primary insurance than contemplated by the terms of the secondary policy." 126 Cal. App. 3d at 600. *See also Cmty. Redevelopment Agency v. Aetna Cas. & Sur. Co.*, 50 Cal. App. 4th 329, 340 (Cal. App. 2d Dist. 1996) (*"Absent a provision in the excess policy specifically describing and limiting the underlying insurance, . . .* all *of the primary policies must exhaust before any excess will have coverage exposure."* (emphasis added)).

AGLI interprets *Olympic* to require that both the ORIC Policy and the XL Policy be exhausted. In *Olympic*, the insured held two primary policies, one with a $20,000 limit (the Pacific Policy) and the other with a $1 million limit (the INA policy). *Id.* at 596. An excess policy was written in "specific excess" of only the Pacific Policy. The insured settled for $495,000, and the California appellate court pro rated the liability between the two primary policies. As a result, neither primary policy paid up to its limit, and the court concluded that neither primary policy had been exhausted and that the excess policy had not been triggered. *Id.* at 600. While the settlement was more than $20,000 and the excess policy did not contemplate the existence of the INA Policy, the *underlying* primary policy – the Pacific Policy – had not been exhausted because of the pro rata apportionment of the settlement.

In this instance, the AGLI Policy is written in specific excess only of the XL Policy. Arguably, the XL Policy is excess over the ORIC Policy, but no party contends that the XL Policy and the ORIC Policy concurrently are "primary," as was the case with the policies in *Olympic*. Thus, while exhaustion of the ORIC Policy arguably could have some relevance to the question of whether the XL Policy should have been triggered in the first instance, no party disputes that Intel has received at least some payment pursuant to the XL Policy, and the issue that remains is whether the *XL Policy* has been exhausted by virtue of that payment.

8

### C. Components of the AGLI Policy

The AGLI Policy consists of several documents, including the Following Form Excess Policy, seven "endorsements" to that policy, and a declarations page. (*See* Labrador Decl. Ex. A.) The Following Form Excess Policy sets for the basic terms of the policy and refers to the declarations page for certain definitions. "Section I. Coverage" of the Following Form Excess Policy provides that AGLI "will pay on behalf of [Intel] the sums in excess of the total Underlying Limits of Insurance shown in Item 6.B. of the Declarations that [Intel] becomes legally obligated to pay as damages," and that the AGLI Policy "applies only to damages covered by the Controlling Underlying Policy as shown in Item 6.A. of the Declarations. Except as otherwise provided by the policy, the coverage follows the definitions, terms conditions, limitations, and exclusions of the Controlling Underlying Policy in effect at the inception of this policy." (Labrador Decl. Ex. A at 13.) "Item 6.A." of the Declarations defines the "Controlling Underlying Policy" as the XL Policy, and "Item 6.B." of the Declarations defines the "Total Limits of All Underlying Insurance" as $50 million. (Labrador Dec. Ex. A at 2.)

The parties appear to agree that AGLI disclaimed a duty to defend in "Section III. Defense" of the Following Form Excess Policy, which states that "[w]e [AGLI] will have the right, but not the duty, to be associated with you or your underlying insurer or both in the . . . defense of any suit which in our opinion may create liability on us for payment under this policy," (Labrador Decl. Ex. A at 14). The Following Form Excess Policy also includes "Condition H," reprinted above.

Each of the endorsements includes the language, "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY." (*See, e.g.,* Labrador Decl. Ex. A at 4.) The parties agree that only Endorsement #1 is relevant to the instant dispute. With certain exclusions that are irrelevant for present purposes, paragraph A of Endorsement #1 states that the AGLI policy conforms to the "exact terms and conditions" of the XL Policy, (Labrador Decl., Ex. A at 4), which undeniably includes a duty to defend. Paragraph B of Endorsement #1 states that the terms of the Following Form Excess Policy "are deleted to the extent [that] they are inconsistent with the terms and conditions of the [XL Policy]." (*Id.*) Finally, Endorsement #1 also includes

9

Paragraph C, which as described above, states that "[n]othing contained in this Endorsement shall obligate us to provide a duty to defend any claim or suit before the Underlying Insurance Limits shown in Item 6.[10] of the Declarations are exhausted by payment of judgments or settlements." (*Id.*)

### D. The terms of the AGLI Policy, not the terms of the XL Policy, control AGLI's duty to defend

The XL Policy makes clear that XL's duty to defend ends "when [XL] has used up the applicable limit of liability in the payment of ultimate net loss." (Labrador Decl. Ex. B at 3.) However, AGLI's duties are created by the terms not of the XL Policy but of the *AGLI* Policy. Intel argues that AGLI's duties are governed by the terms of the XL Policy because of paragraph A of Endorsement #1. However, even if XL's payment of "ultimate net loss" up to the "applicable limit of liability" could serve simultaneously as the cut-off mechanism for XL's duty to defend and the triggering mechanism for AGLI's duty to defend, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Intel's argument – that the combination of the Intel-XL settlement and its own ▮▮▮▮▮ payment of its defense costs is sufficient to exhaust the XL Policy – depends not on the terms of the XL Policy but on Condition H of the AGLI Policy, which states that "[c]overage under [the AGLI Policy] will not apply unless and until the insured or the insured's underlying insurance has paid or is obligated to pay the full amount of the Underlying Limits of Insurance [of the XL Policy]." (Labrador Decl. Ex. A at 17.) AGLI and Markel also contend that the AGLI Policy controls the determination as to when AGLI's duty to defend is triggered, though they based that argument on Paragraph C.

### E. Whether the XL Policy may be exhausted for purposes of the AGLI Policy by payments of defense costs alone

As discussed above, the XL Policy provides that XL's "duty to defend will end when [XL] has used up the applicable limit of liability in the payment of ultimate net loss." (Labrador

---

[10] As discussed above, "Item 6." of the Declarations refers to the $50 million limit of the XL Policy.

10

Decl. Ex. B at 3.) The limit of the XL Policy is $50 million, (*id.*, at 2), and "ultimate net loss" includes both indemnity and "allocated claims expenses," which in turn include "amounts actually paid by [XL] to attorneys . . . in connection with the investigation and settlement of claims and the defense of legal proceedings against [Intel]," (*id.*, at 6). Thus, it is clear that XL's duty to defend could be cutoff by XL's payment of Intel's defense costs alone. However, as just discussed, the question of when *AGLI's* duties are triggered is controlled by the *AGLI* Policy. The issue thus is whether *AGLI's* duty to defend could be triggered by the payment of Intel's defense costs alone and, if so, whether Intel's own payment of its defense costs in this instance is sufficient to trigger the AGLI Policy.

**F.     Whether Paragraph C or Condition H controls exhaustion of the XL Policy for purposes of the AGLI Policy**

Intel contends that the Court should look first to paragraph A of Endorsement #1, which defines AGLI's duty to defend by conforming the AGLI Policy to the terms of the XL Policy. Intel asks the Court to look next to paragraph B of Endorsement #1, which appears to delete "Section III" of the Following Form Excess Policy, a disclaimer of the duty to defend that is inconsistent with the terms of the XL Policy. Intel then directs the Court's attention to Paragraph C, pointing out that the paragraph begins with the words, "Nothing *contained in this Endorsement*" and arguing that Paragraph C's limitation with respect to "exhaust[ion] by payment of judgments or settlements" thus cannot apply to obligations that are found outside of Endorsement #1. Intel contends that AGLI's duty to defend is defined not by Endorsement #1 but by the XL Policy itself, arguing that the exhaustion of the XL Policy must be controlled by a clause other than Paragraph C, which in this case is Condition H.

**1.     The effect of Endorsement #1**

However, while AGLI's duty to defend follows the contours of the duty specified in the XL Policy, that duty is not *created* by the XL Policy. The XL Policy creates only *XL's* duty to defend. AGLI's duty is created by the operation of paragraphs A and B of Endorsement #1 to the *AGLI* Policy, which provide that AGLI is bound to the terms and conditions in the XL Policy and that Section III of the Following Form Excess Policy is deleted. Without Endorsement #1, AGLI

has no duty to defend, as AGLI disclaimed that duty in Section III of the Following Form Excess Policy. Because it is the endorsement that creates AGLI's duty to defend, "[n]othing contained in th[at] Endorsement shall obligate [AGLI] to provide a duty to defend" unless the conditions of Paragraph C are met. (*Id.*)

AGLI and Markel seek to reconcile this conclusion with Condition H by reasoning that Condition H provides the mechanism for triggering AGLI's duty to *indemnify*, noting that Condition H contains the term "damages." In response, Intel points out that the first sentence of Condition H provides expressly that "*coverage* under this policy" is triggered by the payment of the underlying limits of the XL Policy by either the insured or the insured's underlying insurance. It argues that the "coverage" of the AGLI Policy thus must include defense costs.

As discussed above, "Section I. Coverage" of the Following Form Excess Policy provides that AGLI "will pay on behalf of [Intel] the sums in excess of the total Underlying Limits of Insurance shown in Item 6.B. of the Declarations that [Intel] *becomes legally obligated to pay as damages*," and that the AGLI Policy "applies only to *damages* covered by the Controlling Underlying Policy as shown in Item 6.A. of the Declarations. Except as otherwise provided by the policy, the *coverage* follows the definitions, terms conditions, limitations, and exclusions of the Controlling Underlying Policy in effect at the inception of this policy." (Labrador Decl. Ex. A at 13(emphasis added).)

The AGLI Policy does not otherwise define the term "damages." The California Supreme Court has construed the term "damages" as used in a standard comprehensive general liability insurance policy to refer to "money ordered by a court." *Certain Underwriters at Lloyd's of London v. Super. Court*, 24 Cal. 4th 945, 960 (2001). Such a construction is bolstered by the use of the phrase "legally obligated" in the Following Form Excess Liability Policy. However, because coverage under the Following Form Excess Policy "follows the definitions" provided in the XL Policy, the Court also must determine how the XL Policy defines the term "damages."

The XL Policy provides that coverage under the policy includes the insured's "ultimate net loss," defined as "[a]ll sums which the Insured is legally obligated to pay as damages . . . *and* allocated claims expense to which this policy applies." (Labrador Decl. Ex. B (emphasis

12

added).) The XL Policy defines "allocated claims expenses" as "amounts actually paid by the Company . . . to attorneys . . . in connection with the investigation and settlement of claims and the defense of legal proceedings against the Insured(s) . . . ." (*Id.*) Thus, the XL policy distinguishes between "damages" and defense costs. As provided in "Section I. Coverage," the AGLI Policy adopted these definitions, and the Following Form Excess Policy, by its original terms, covered only "sums . . . that [Intel] becomes legally obligated to pay *as damages*," thus excluding AGLI's liability for Intel's "ultimate net loss" or "allocated claims expenses." Therefore, Condition H, as it originally was conceived, applied only to AGLI's duty to reimburse Intel for "damages."

Intel is correct to point out that pursuant to Endorsement #1, the AGLI Policy does include a duty to defend. It argues that Endorsement #1 must have expanded the reference to "coverage" in Condition H to encompass a duty to defend and that such duty is triggered when "the insured or the insured's underlying insurance has paid or is obligated to pay the full amount of the Underlying Limits [of the XL Policy.]" (Labrador Decl. Ex. A at 17.) However, if Condition H were read as broadening Paragraph C, that reading would contradict the express statement in Paragraph C that "[n]othing contained in this Endorsement," including paragraph A (which incorporated the duty to defend from the XL Policy into the AGLI policy), "obligates [AGLI] to provide a duty to defend any claim or suit before the Underlying Insurance Limits [of the XL Policy] are exhausted by payment of judgment or settlements." (Labrador Decl. Ex. A at 4.) Thus, while Condition H was not *deleted* by paragraph B of Endorsement #1 – because its limitation on AGLI's duty to *indemnify* is not "inconsistent" with the terms of the XL Policy – Condition H also was *unchanged* by paragraph A of Endorsement #1.

### 2. Whether Paragraph C make AGLI's promise to defend illusory

Intel contends that if Paragraph C is the trigger for AGLI's duty to defend, then AGLI's promise to defend is illusory. Intel contends that the reference to "judgment or settlements" refers only to payments made by an insurer to resolve the underlying action, *i.e.*, payments made to satisfy the insurer's duty to indemnify the insured, and that AGLI's duty to defend could be triggered only if Intel no longer required a defense because the underlying action already had

13

been resolved. *See Scottsdale Ins. Co. v. Essex Ins. Co.*, 98 Cal. App. 4th 86, 95 (Cal. App. 4th Dist. 2002) (noting that a contract is invalid if the agreement is illusory, *i.e.*, "when one of the parties assumes no obligation").

Intel's interpretation of the phrase "judgments or settlements" is incorrect. The phrase "exhausted by the payment of judgments or settlements" appears to have originated in standard insurance contracts to protect the insured's right to a defense provided by that insurer. *See Aetna Casualty & Surety Co. v. Sullivan*, 597 N.E.2d 62, 65 (Mass. App. Ct. 1992) (citing *Conway v. Country Casualty Ins. Co.*, 92 Ill. 2d 388, 395-96 (Ill. 1982)). Before standard insurance contracts began to include that phrase, "those contracts set forth the insurer's duty to defend or to settle claims against the insured without mention of the consequences of exhaustion of the full coverage by tender or otherwise," *id.*, and it was unclear whether an insurer could extinguish its duty to defend simply by tendering the policy limits to the insured. By providing that the duty to defend only was "exhausted by payment of judgments or settlements," the contract prevented such a tactic by extending the duty to defend until the payment of a "judgment" or "settlement."

The plain meaning of "judgment" implies the existence of a judicial order. The meaning of "settlement" is less clear. The term could refer only to payments made to "settle," *i.e.*, resolve, an underlying action. If that were true, AGLI's promise to defend would be illusory because AGLI's duty to defend would be triggered only once the underlying action had been resolved. However, the purpose of requiring a "settlement" is to prevent the exhaustion of the insurer's duty to defend by the unilateral act *of the insurer* in tendering the policy limits to the insured. Here, neither AGLI nor Markel argues that a bilateral agreement between XL and Intel for XL to pay a portion of Intel's defense costs necessarily would be insufficient to exhaust the XL Policy for purposes of the AGLI Policy. Instead, they argue that AGLI's duty to defend has not been triggered because *the amount* of XL's payment to Intel is insufficient to "exhaust" the policy limits.

3. **Whether Paragraph C would cause AGLI's duty to defend to be broader than its duty to indemnify**

Intel also contends that AGLI and Markel's interpretation cannot be correct because it

14

would result in AGLI's duty to indemnify being broader than its duty to defend. This argument again is premised on Intel's assertion that under Paragraph C, AGLI's duty to defend can be triggered only if the underlying litigation has been resolved. However, as discussed above, Paragraph C does not preclude the "exhaustion" of the XL Policy by a settlement between Intel and XL. Instead, as argued by AGLI and Markel, the issue is whether the amount of the settlement *at issue in this case* is sufficient for "exhaustion."

G.   **Whether the XL Policy was "exhausted" by XL's payment**

While it does not appear that California courts have interpreted the precise phrase at issue in the context of an excess insurance policy, *Farmers Ins. Exch. v. Hurley*, 76 Cal. App. 4th 797, 803-804 (Cal. App. 4th Dist. 1999) did interpret a very similar phrase in the context of under-insured motorist coverage. California Insurance Code § 11580.2(p)(3) provides that under-insured motorist coverage does not apply until the limits of any policy covering the under-insured vehicle "have been exhausted by payment of judgments or settlements . . . ." The question presented in *Hurley* was "whether a settlement for less than the policy limits satisfies the exhaustion requirement provided the insured agrees to credit the underinsurance carrier with the full policy limits as if they had been paid." 76 Cal. App. 4th at 799. The California Court of Appeal concluded that it "[could not] interpret this language in any way other than to mean that the full limits of the policy must actually be paid." *Id.* at 803 *Hurley* agreed with *Continental Ins. Co. v. Cebe-Habersky*, 571 A.2d 104, 106 (Conn. 1990), which noted that "[t]here is nothing in the common meaning of 'exhaust' to suggest that partial use of what is available amounts to its exhaustion." 76 Cal. App. 4th at 803.

Intel contends that *Hurley* is inapposite because that case construed the California Insurance Code rather than a private insurance contract and interpreted the terms of under-insured motorist coverage rather than a general liability policy. However, in what admittedly is dicta, *Hurley* noted that excess insurance policies involved "analogous" considerations and commented that "California courts have consistently interpreted such provisions [in the context of excess insurance policies] to mean that there is no excess coverage where the insured settles for less than the full limits of the primary policy." *Id.* at 803-04 (citing *Cmty. Redevelopment*

15

*Agency v. Aetna Cas. & Sur. Co.*, 50 Cal. App. 4th 329, 340 (Cal. App. 2d Dist. 1996); *Olympic*, 126 Cal. App. 3d at 600).

Intel directs the Court's attention to *Teigen v. Jelco of Wis., Inc.*, 367 N.W. 2d 806, 809-10 (Wis. 1985), in which the Wisconsin Supreme Court concluded that a settlement between the insured and the underlying insurer for less than the policy limits was sufficient to exhaust the underlying insurance for purposes of the excess insurance. That court reasoned that the desirability of such a rule "lies in the encouragement of partial settlements in future cases, thereby fostering effective and expeditious resolution of lawsuits. Partial settlements not only benefit the parties involved, but the justice system as a whole." *Id.* at 810. However, in *Qualcomm*, a California Court of Appeal rejected expressly the placement of "policy considerations (i.e., the promotion of convenient settlement or adjustment of disputes) above the plain meaning of the terms of the excess policy."[11] 161 Cal. App. 4th at 198.

Intel contends that *Qualcomm* is distinguishable. It claims that meaning of Paragraph C is not "plain," as it does not provide who may "exhaust" the underlying policy and that its own payment of its defense costs is sufficient for that purpose. However, Intel cites no authority holding that an insured's payment of its own defense costs amounts to the payment of a "judgment" or "settlement." While *Hurley* may not be directly on point, its construction of the phrase "exhausted by payment of judgments or settlements" to require "that the full limits of the policy must actually be paid," 76 Cal. App. 4th at 803, cannot simply be ignored.

**H.    There is no conflict or ambiguity between Paragraph C and Condition H**

Under California law, "'[a]n insurance policy provision is ambiguous when it is capable of two or more constructions both of which are reasonable.'" *Bay Cities Paving & Grading v. Lawyers' Mutual Ins. Co.*, 5 Cal. 4th 854, 867 (1993) (quoting *Suarez v. Life Ins. Co. of N. Am.*, 206 Cal. App. 3d 1396, 1402 (Cal. App. 2d Dist. 1988)). The parties offer varying proposals should the Court determine that Paragraph C conflicts with Condition H or that the interplay

---

[11] Intel contends that this Court declined to follow *Qualcomm* in its previous order. However, relying on the arguments then presented, the Court in fact found that *Qualcomm* was distinguishable based on the apparent incompatibility of Paragraph C and Condition H.

between Paragraph C and Condition H creates an ambiguity. *See Continental Cas. Co. v. Phoenix Constr. Co.*, 46 Cal. 2d 423, 431 (1956) (noting that "if there is a conflict in meaning between an endorsement and the body of the policy, the endorsement controls."); *id.* (also stating that "the written or specially prepared portions of a contract control over those which are printed or taken from a form."); *Narver v. California State Life Ins. Co.*, 211 Cal. 176, 180 (1931) (citations omitted) ("It is a well-recognized rule of law that if any uncertainties or ambiguities appear in an insurance policy which may be solved by either one of two reasonable constructions, the one which is most favorable to the insured and which will give life, force and effect to the policy should be adopted.").

However, while the AGLI Policy fairly might be characterized as a mash of "following forms" and endorsements, the fact that a policy is difficult to construe does not render it ambiguous. For there to be an ambiguity, there must be competing interpretations that are "reasonable." In the original briefing on Intel's motion for partial summary judgment, Intel relied upon Condition H, and AGLI and Markel relied upon Paragraph C, but none of the parties attempted to reconcile the seeming conflict between the triggering mechanism for AGLI's "coverage" in Condition H and Paragraph C's limitation of the duty to defend to situations in which the XL Policy is "exhausted by payment of judgments or settlements." Without such an explanation, the Court concluded that both interpretations were reasonable and that Condition H and Paragraph C could not coexist. As it was required to do in such circumstances, the Court construed the AGLI Policy against the drafter.

On reconsideration, AGLI and Markel offer extensive new argument to explain the apparent contradiction between the two provisions, contending for the first time that Condition H and Paragraph C apply separately to distinct duties. As discussed in detail above, this position is supported both by the text of the insurance policies and by controlling precedent. On the other hand, Intel's interpretation effectively would write Paragraph C out of the contract. When Condition H is construed as affecting only the triggering mechanism for AGLI's duty to indemnify, the apparent purpose of Paragraph C is to define the triggering mechanism for AGLI's duty to defend. Having been presented with a reasonable explanation that preserves both

17

clauses of the policy, the Court no longer can conclude that Intel's interpretation is reasonable. *See Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1265 (1992) ("[L]anguage in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case."). Because the XL Policy has not been exhausted for purposes of the AGLI Policy as the latter is properly construed, AGLI and Markel's motion for reconsideration will be granted, and the order dated July 26, 2010 will be vacated.

## IV. MOTION FOR PARTIAL SUMMARY JUDGMENT

The standard applied to a motion for partial summary judgment is identical to the standard applied to a motion for summary judgment with respect to the entire case. *See Urantia Foundation v. Maaherra*, 895 F.Supp. 1335, 1335 (D. Ariz. 1995). A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of informing the Court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party meets this initial burden, the burden shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. *Anderson*, 477 U.S. 242, 248-49; *Barlow v. Ground*, 943 F.2d 1132, 1134-36 (9th Cir. 1991).

For the reasons discussed above, Intel's motion for partial summary judgment will be denied. Paragraph C of the AGLI Policy determines when AGLI's duty to defend is triggered. According to Paragraph C, XL's payment of less than the full policy limits is insufficient to exhaust the underlying insurance, even when that payment is combined with Intel's own payment. Because the XL Policy has not been exhausted, AGLI's duty to defend has not been triggered, and the Court's inquiry with respect to Intel's motion for partial summary judgment is

18

at an end.

Although AGLI and Markel have not moved separately for summary judgment in this Court, "[u]nder certain limited circumstances a district court may issue summary judgment on its own motion." *Portsmouth Square, Inc. v. Shareholders Protective Comm.*, 770 F.2d 866, 869 (9th Cir. 1985). Most commonly, "[s]*ua sponte* summary judgment is appropriate where one party moves for summary judgment and, after the hearing, it appears from all the evidence presented that there is no genuine issue of material fact and the *non-moving* party is entitled to judgment as a matter of law." *Id.* (citing *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 311 (9th Cir. 1982)) (emphasis in the original). In concluding that Intel's motion should be denied because AGLI's duty to defend has not been triggered, it follows necessarily that Intel cannot prevail on counts 1 and 2 of its amended complaint – its claims for declaratory relief and breach of contract with respect to AGLI's duty to defend – because each of these claims relies upon an assertion that AGLI owed a duty to defend in the first instance. Accordingly, partial summary judgment will be entered in favor of AGLI and Markel favor with respect to these claims.

## V. CONCLUSION

The course of this litigation has taken a frustrating turn since AGLI and Markel filed their papers in opposition to Intel's motion for partial summary judgment. AGLI is correct that it argued previously that Paragraph C controls exhaustion of the XL Policy. However, despite the fact that Intel's motion for summary judgment relied *extensively* on the interpretation of Condition H, AGLI's opposition papers did not discuss that provision at all. Although Markel did discuss Condition H in passing, it did not assert the "duty to defend versus duty to indemnify" argument addressed herein. Instead, AGLI made that argument for the first time in reply papers filed in the Delaware Superior Court. This Court nonetheless allowed AGLI and Markel to seek reconsideration because it serves the interests of justice for courts to make correct rulings with respect to matters of law. That said, AGLI could have and should have raised the argument in its initial opposition papers in this Court, and its failure to do so has wasted a significant amount of time and resources for both the Court and Intel.

Good cause therefor appearing, the motion for reconsideration will be granted. The Court

concludes that the XL Policy has not been exhausted for purposes of the AGLI Policy and that AGLI's duty to defend has not been triggered. Accordingly, the order dated July 26, 2010 will be vacated, Intel's motion for partial summary judgment will be denied, and partial summary judgment will be entered in favor of AGLI and Markel with respect to Intel's first and second claims for relief.

**IT IS SO ORDERED.**

DATED: 12/6/2010

_____
JEREMY FOGEL
United States District Judge